EXHIBIT A

## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

TAMMY LYNN BRADDS and ANTHONY
TESTA, individually, and on behalf of all
others similarly situated,

           Plaintiffs,

    v.

FLORIDA HEALTH SCIENCES CENTER,
INC. d/b/a TAMPA GENERAL HOSPITAL,
a Florida Corporation,

           Defendant.

Case No. _____

**CLASS REPRESENTATION**
**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Tammy Lynn Bradds and Anthony Testa ("Plaintiffs"), individually, and on

behalf of all others similarly situated, bring this action against the Florida Health Sciences Center,

Inc., doing business as Tampa General Hospital ("TGH" or "Defendant"). Plaintiffs bring this

action by and through their attorneys, and allege, based upon personal knowledge as to their own

actions, and based upon information and belief as to all other matters, as follows.

### I.    INTRODUCTION

1.    The Tampa General Hospital is a private acute care hospital that serves patients

across twelve counties throughout southern Florida.[1]

2.    As part of its hospital operations, TGH collects, maintains, and stores highly

sensitive personal and medical information pertaining to its patients, including, but not limited to:

Social Security numbers, dates of birth, full names, addresses, telephone numbers, driver's license

numbers (collectively, "personally identifying information" or "PII"), information regarding

---

[1] *About Tampa General Hospital*, Tampa General Hospital, https://www.tgh.org/about-tgh (last visited July
26, 2023).

medical treatment, diagnosis, and prescriptions, medical record numbers, health insurance information, other protected health information (collectively, "private health information" or "PHI"), as well as financial account/payment card information ("financial account information").

3.     When storing and handling this highly-sensitive PII, PHI, and financial account information (collectively, "Private Information"), TGH had and continues to have an obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

4.     Unfortunately, TGH clearly failed to invest in adequate data security measures and systems. And as a direct, proximate, and foreseeable result of its inexcusable failure to implement reasonable security protections, unauthorized cybercriminals breached TGH's information systems and databases on and around May 12, 2023.

5.     Due to further security failures on the part of TGH, it did not detect this intrusion until May 31, 2023, which allowed cybercriminals unfettered access to the sensitive Private Information of its patients for a period not less than 19-days.

6.     TGH commenced an investigation immediately after it detected the intrusion. This investigation determined that unauthorized parties had potentially exfiltrated the Private Information of TGH's patients. TGH notified its victims of the data breach on July 19, 2023, a full 49-days after TGH first detected the intrusion, and at least 68-days after cybercriminals first breached TGH's systems. *See* Notice of Data Breach is attached as **Exhibit A**.

7.     It is clear that TGH failed to take sufficient and reasonable measures to safeguard its data security systems to prevent the Data Breach from occurring; to disclose to its patients, and the public at large, that it lacked appropriate data systems and security practices to secure Private Information; and to timely detect and provide adequate notice of the Data Breach to affected

individuals. Due to TGH's failures, Plaintiffs and over a million individuals suffered and continue to suffer substantial harm and injury.

8.      Furthermore, TGH's failure to promptly notify Plaintiffs and Class members that their Private Information was exfiltrated due its apparent security failures virtually ensured that the unauthorized third parties who exploited those security lapses could monetize, misuse and/or disseminate that Private Information before Plaintiffs and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiffs and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

9.      As a result of TGH's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiffs' and Class members' Private Information was accessed and acquired by unauthorized third-parties for the express purpose of misusing the data and causing further irreparable harm to the personal, financial, reputational, and future well-being of TGH's current and former patients. Plaintiffs and Class members face the real, immediate, and likely danger of identity theft and misuse of their Private Information, especially because their Private Information was specifically targeted by malevolent actors.

10.     Plaintiffs and Class members suffered injuries as a result of TGH's conduct including, but not limited to: lost or diminished value of their Private Information; out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

time needed to change usernames and passwords on their accounts; time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach; charges and fees associated with fraudulent charges on their accounts; and the continued and increased risk of compromise to their Private Information, which remains in TGH's possession and is subject to further unauthorized disclosures so long as TGH fails to undertake appropriate and adequate measures to protect their Private Information. These risks will remain for the lifetimes of Plaintiffs and the Class.

11.     Accordingly, Plaintiffs bring this action on behalf of all those similarly situated to seek relief from Defendant's failure to reasonably safeguard Plaintiffs' and Class members' Private Information; its failure to reasonably provide timely notification that Plaintiffs' and Class members' Private Information had been compromised by an unauthorized third party; and for intentionally and unconscionably deceiving Plaintiffs and Class members concerning the status, safety, location, access, and protection of their Private Information.

## II.     PARTIES

### Plaintiff Tammy Lynn Bradds

12.     Plaintiff Tammy Lynn Bradds is a resident and citizen of Saint Petersburg, Florida. Plaintiff Bradds is a former patient of TGH. Plaintiff Bradds received TGH's Data Breach Notice.

### Plaintiff Anthony Testa

13.     Plaintiff Anthony Testa is a resident and citizen of Madeira Beach, Florida. Plaintiff Anthony Testa is a current patient of TGH. Plaintiff Testa received TGH's Data Breach Notice.

### Defendant Florida Health Sciences Center, Inc.

14.     The Florida Health Sciences Center, Inc. is a Florida corporation with its principal place of business located at 1 Tampa General Circle, Tampa, Florida 33606. Florida Health Sciences Center, Inc. operates under the name Tampa General Hospital. TGH is an acute care

4

hospital affiliated with the University of South Florida College of Medicine, serving as the medical school's primary teaching hospital.[2] It has 1,041 beds and serves a 12-county area surrounding Tampa, Florida, with a population of approximately 4 million.[3] The hospital currently employs more than 8,000 people and generates approximately $1.6 billion in annual revenue.[4]

### III.    JURISDICTION AND VENUE

15.    This Court has subject-matter jurisdiction pursuant to Fla. Stat. § 26.012 because this civil class action seeks and demands money damages in excess of $15,000.

16.    This Court has personal jurisdiction over Defendant pursuant to Fla. Stat. § 48.193 because Defendant operated, conducted, engaged in, or carried on a business or business venture in Florida, had an office or agency in Florida, committed the tortious violations complained of herein in Florida, and will be served with process in Florida.

17.    Venue is proper in this Court under Fla. Stat. § 47.011 because Defendant resides in this District and because the events, actions, and omissions giving rise to this cause of action occurred in Hillsborough County.

### IV.    FACTUAL ALLEGATIONS

A.    **Tampa General Hospital – Background**

18.    As a large acute care hospital, TGH collects, maintains, and stores the highly sensitive PII and medical information provided by its current and former patients, including but not limited to: full names, addresses, Social Security numbers, dates of birth, medical and

---

[2] Richard Console, Jr., *Tampa General Hospital To Notify 1.2 Million Patients of Recent Data Breach*, JDSupra (July 20, 2023), available at https://www.jdsupra.com/legalnews/tampa-general-hospital-to-notify-1-2-4467472/ (last accessed July 23, 2023).

[3] *Id.*

[4] *Id.*

treatment information, health insurance information, driver's license numbers, passport information, financial account information and contact information.

19.     On information and belief, at the time of the Data Breach, TGH had failed to implement necessary data security safeguards, which resulted in an unauthorized third party or third parties accessing the Private Information of over a million current and former patients.

20.     Current and former patients of TGH, such as Plaintiffs and Class members, allowed their Private Information to be made available with the reasonable expectation that any entity with access to this information, would comply with its obligations to keep that sensitive and personal information confidential and secure from illegal and unauthorized access, and that those entities would provide them with prompt and accurate notice of any unauthorized access to their Private Information.

21.     Unfortunately for Plaintiffs and Class members, TGH failed to carry out its duty to safeguard sensitive Private Information and provide adequate data security, thus failing to protect Plaintiffs and Class members from having their Private Information exfiltrated during the Data Breach.

**B.      The Data Breach**

22.     On or before May 12, 2023, cybercriminals breached TGH's information systems and internal databases.[5]

23.     TGH did not detect this intrusion until May 31, 2023.[6] In the intervening 19-days, possibly longer depending on the actual date of successful intrusion, these cybercriminals enjoyed unfettered access to TGH's systems and the Private Information of its patients.

---

[5] *Id.*

[6] *Id.*

24.     After detecting the intrusion, TGH notified the FBI and launched an investigation with the assistance of third-party data security specialists.[7] This investigation determined that cybercriminals had successfully breached the systems on May 12, 2023, was active on TGH's systems until May 30, 2023, and had stolen the following types of sensitive patient information: Social Security numbers, addresses, phone numbers, dates of birth, health insurance information, medical record numbers, patient account numbers, dates of service, and treatment information.[8]

25.     On July 19, 2023, TGH sent out a data breach notice to all individuals it believed was affected by this data security incident.[9]

26.     TGH estimated that the Private Information of around 1.2 million individuals was compromised in this incident.[10]

**C.     TGH's Many Failures Both Prior to and Following the Breach**

27.     TGH could have prevented this Data Breach by properly encrypting or otherwise protecting their information systems and internal databases containing Private Information.

28.     To be sure, collecting, maintaining, and protecting Private Information is vital to virtually every aspect of TGH's operation as a healthcare service provider.

29.     TGH's failure to properly safeguard Plaintiffs' and Class members' Private Information allowed the unauthorized actors to access this highly valuable information, but TGH failure to timely notify Plaintiffs and other victims of the Data Breach that their Private Information had been misappropriated served only to exacerbate the harms they suffered as a direct and

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

proximate result thereof, because it precluded them from taking meaningful steps to safeguard their identities prior to the further dissemination and misuse of their Private Information.

30.     First, TGH failed to timely detect the breach for at least nineteen days. This failure allowed cybercriminals to plunder its data vaults unmolested for an estimated eighteen days, until May 30, 2023, as they perused through patient files. And by the time that TGH discovered the intrusion on May 31, 2023, the cybercriminals had already left its systems after presumably taking everything of value.

31.     Second, TGH failed to timely notify affected individuals, including Plaintiffs and Class members, that their highly-sensitive Private Information had been accessed by unauthorized third parties. TGH waited 50 days from the time of discovery to notify victims of the Data Breach that their Private Information had been compromised.

32.     Third, TGH has made no effort to protect Plaintiffs and the Class from the long-term consequences of TGH's acts and omissions. Although the notice offered victims complimentary two-year access to credit monitoring and identity theft protection services[11], Plaintiffs' and Class members' PII, including their Social Security numbers, and even more immutable PHI cannot be changed and will remain at risk long beyond two years. As a result, Plaintiffs and the Class will remain at a heightened and unreasonable risk of identity theft for the remainder of their lives.

33.     In short, TGH's myriad failures, including the failure to timely detect an intrusion and failure to timely notify Plaintiffs and Class members that their personal and medical information had been exfiltrated due to TGH's security failures, allowed unauthorized individuals

---

[11] *Notice to Our Patients of Cybersecurity Event*, Tampa General Hospital, available at https://www.tgh.org/cybersecurity-notice (last accessed July 23, 2023)

to access, misappropriate, and misuse Plaintiffs' and Class members' Private Information for months before TGH finally granted victims the opportunity to take proactive steps to defend themselves and mitigate the near- and long-term consequences of the Data Breach.

**D.     Data Breaches Pose Significant Threats**

34.     Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that PII, including Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

35.     In 2022, the Identity Theft Resource Center's Annual End-of-Year Data Breach Report listed 1,802 total compromises involving 422,143,312 victims for 2022, which was just 50 compromises short of the current record set in 2021.[12] The HIPAA Journal's 2022 Healthcare Data Breach Report reported 707 compromises involving healthcare data, which is just 8 shy of the record of 715 set in 2021 and still double that of the number of similar such compromises in 2017 and triple the number of compromises in 2012.[13]

36.     Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 1,862 in 2021, to 2022's total of 1,802.[14] The

---

[12] *2022 End of Year Data Breach Report*, Identity Theft Resource Center (January 25, 2023), available at: https://www.idtheftcenter.org/publication/2022-data-breach-report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report+ (last accessed March 23, 2023).

[13] *2022 Healthcare Data Breach Report*, The HIPAA Journal (January 24, 2023), available at: https://www.hipaajournal.com/2022-healthcare-data-breach-report/ (last accessed March 23, 2023).

[14] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2022*, Statista, available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/ (last accessed last accessed March 23, 2023).

number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 422 million in 2022, which is an increase of nearly 50%. [15]

37.     Data breaches are a constant threat because PII is routinely traded on the dark web as s simple commodity, with social security numbers being so ubiquitous to be sold at as little as $2.99 apiece and passports retailing for as little as $15 apiece.[16]

38.     In addition, the severity of the consequences of a compromised social security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory elements can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> [a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[17]

This is exacerbated by the fact that the problems arising from a compromised social security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information,

---

[15] *Id.*

[16] *What is your identity worth on the dark web?* Cybernews (September 28, 2021), available at: https://cybernews.com/security/whats-your-identity-worth-on-dark-web/ (last accessed March 23, 2023).

[17] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed March 23, 2023).

credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[18]

39.     Beyond social security numbers, the most sought after and expensive PII on the dark web are stolen medical records which command prices from $250 to $1,000 each.[19] Medical records are considered the most valuable because unlike credit cards, which can easily be canceled, and social security numbers, which can be changed, medical records contain "a treasure trove of unalterable data points, such as a patient's medical and behavioral health history and demographics, as well as their health insurance and contact information".[20] With this bounty of ill-gotten information, cybercriminals can wreak havoc and perpetuate far serious crimes such as drug dealing (by obtaining prescriptions under the victims' names) and major fraud (by filing large-scale and bogus insurance claims).[21]

40.     The wrongful use of compromised medical information is known as medical identity theft and the damage resulting from medical identity theft is routinely far more serious than the harm resulting from the theft of simple PII. Victims of medical identity theft spend an average of $13,500 to resolve problems arising from medical identity theft and there are currently no laws limiting a consumer's liability for fraudulent medical debt (by contrast, a consumer's liability for fraudulent credit card charges is capped at $50).[22] It is also "considerably harder" to

---

[18] *Id.*

[19] Paul Nadrag, Capsule Technologies, *Industry Voices—Forget credit card numbers. Medical records are the hottest items on the dark web*, Fierce Healthcare (January 26, 2021), available at: https://www.fiercehealthcare.com/hospitals/industry-voices-forget-credit-card-numbers-medical-records-are-hottest-items-dark-web (last accessed March 23, 2023).

[20] *Id.*

[21] *Id.*

[22] Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html (last accessed March 23, 2023).

reverse the damage from medical identity theft with victims routinely suffering long term harassment from aggressive medical debt collection practices, irreversible damage to credit, and even prosecution after thieves used their stolen data to stockpile prescription drugs for sale in the drug trade.[23]

41.     Instances of Medical identity theft have grown exponentially over the years from approximately 6,800 cases in 2017 to just shy of 43,000 in 2021, which represents a seven-fold increase in the crime.[24]

42.     As explained by Kunal Rupani, director of product management at Accellion, a private cloud solutions company, in the context of a different medical data breach:

> Unlike credit card numbers and other financial data, healthcare information doesn't have an expiration date. As a result, a patient's records can sell on the black market for upwards of fifty times the amount of their credit card number, making hospitals and other healthcare organizations extremely lucrative targets for cybercriminals.[25]

43.     In light of the dozens of high-profile health and medical information data breaches that have been reported in recent years, entities like Defendant charged with maintaining and securing patient PII know the importance of protecting that information from unauthorized disclosure. Indeed, on information and belief, Defendant was aware of highly publicized security breaches where PII and protected health information was accessed by unauthorized cybercriminals, including breaches of computer systems involving: UnityPoint Health, Lifetime

---

[23] *Id.*

[24] *Id.*

[25] Jeff Goldman, 21st Century Oncology Notifies 2.2 Million Patients of Data Breach (Mar. 11, 2016), http://www.esecurityplanet.com/network-security/21st-century-oncology-notifies-2.2-million-patients-of-data-breach.html (last accessed March 11, 2023).

Healthcare, Inc., Community Health Systems, Kalispell Regional Healthcare, Anthem, Premera Blue Cross, and many others.[26]

44.     In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data, including recent cases concerning health-related information against LabMD, Inc., SkyMed International, Inc., and others. The FTC publicized these enforcement actions to place companies like Defendant on notice of their obligation to safeguard customer and patient information.

45.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

46.     Given the nature of TGH's Data Breach, as well as the length of the time TGH's networks were breached and the long delay in notification to the Class, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiffs' and Class members' Private Information can easily obtain Plaintiffs' and Class members' tax returns or open fraudulent credit card accounts in Class members' names.

47.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[27] The

---

[26]     *See  e.g.,  Healthcare  Data  Breach  Statistics*,  HIPAA  Journal,  available  at: https://www.hipaajournal.com/healthcare-data-breach-statistics (last accessed March 11, 2023).

[27] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes, Mar 25, 2020, available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1 (last accessed March 11, 2023).

information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

48.     To date, TGH has offered its consumers *only* two years of identity theft monitoring services. The offered services are inadequate to protect Plaintiffs and the Class from the threats they will face for years to come, particularly in light of the Private Information at issue here.

49.     Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgment of the risks posed by data breaches, and its own acknowledgment of its duties to keep Private Information private and secure, TGH failed to take appropriate steps to protect the Private Information of Plaintiffs and the Class from misappropriation. As a result, the injuries to Plaintiffs and the Class were directly and proximately caused by TGH's failure to implement or maintain adequate data security measures for its current and former patients.

**E.     TGH Had a Duty and Obligation to Protect Private Information**

50.     TGH has an obligation, both statutory and self-imposed, to keep confidential and protect from unauthorized access and/or disclosure Plaintiffs' and Class members' Private Information. TGH's obligations are derived from: 1) government regulations and state laws, including HIPAA and FTC rules and regulations; 2) industry standards; and 3) promises and representations regarding the handling of sensitive PII and medical records. Plaintiffs and Class members provided, and TGH obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

51.     HIPAA requires, *inter alia*, that Covered Entities and Business Associates implement and maintain policies, procedures, systems and safeguards that ensure the confidentiality and integrity of consumer and patient PII and PHI, protect against any reasonably

anticipated threats or hazards to the security or integrity of consumer and patient PII and PHI, regularly review access to data bases containing protected information, and procedures and systems to detect, contain, and correct any unauthorized access to protected information. *See* 45 CFR § 164.302, *et seq.*

52.     Additionally, HIPAA requires Covered Entities and Business Associates to provide notification to every affected individual following the impermissible use or disclosures of any protected health information. The individual notice must be provided to affected individuals without unreasonable delay and no later than 60 days following discovery of the breach. Further, for a breach involving more than 500 individuals, entities are required to provide notice in prominent media outlets. *See* 45 CFR § 164.400, *et seq.*

53.     Defendant has an obligation to comply with HIPAA requirements concerning the protection of PII and protected health information and prompt and adequate notification of data breaches.

54.     Additionally, the FTC Health Breach Notification Rule obligates companies that suffered a data breach to provide notice to every individual affected by the data breach, as well as notifying the media and the FTC. *See* 16 CFR 318.1, *et seq.*

55.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[28] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number,

---

[28] 17 C.F.R. § 248.201 (2013).

alien registration number, government passport number, employer or taxpayer identification number."[29]

56.     The FTC has issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-marking.[30]

57.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[31] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[32] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[33] TGH clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data exfiltrated.

58.     Here, at all relevant times, TGH was fully aware of its obligation to protect the PII Private Information of its current and former patients, including Plaintiffs and the Class, and on

---

[29] *Id.*

[30]   *Start With Security*, Federal Trade Commission (June 2015), available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[31] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n

(October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.

[32] *Id.*

[33] *Id.*

information and belief, TGH is a sophisticated and technologically savvy medical services provider that relies extensively on technology systems and networks to maintain its practice, including storing its patients' PII, protected health information, and medical information in order to operate its business.

59.    TGH had and continues to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between TGH and Plaintiffs and Class members. TGH alone had the exclusive ability to implement adequate security measures to its cyber security network to secure and protect Plaintiffs' and Class members' Private Information.

60.    TGH's failure to follow the FTC guidelines and its subsequent failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data constitutes unfair acts or practices prohibited by Section 5 of the Federal Trade Commission Act, 14 U.S.C. § 45.

61.    Further, TGH had a duty to promptly notify Plaintiffs and the Class that their Private Information was accessed by unauthorized persons.

**F.    TGH Violated HIPAA, FTC and Industry Standard Data Protection Protocols**

62.    HIPAA obligates Covered Entities and Business Associates to adopt administrative, physical, and technology safeguards to ensure the confidentially, integrity, and security of consumer and patient PII and PHI.

63.    The FTC rules, regulations, and guidelines obligate businesses to protect PII and PHI from unauthorized access or disclosure by unauthorized persons.

64.    At all relevant times, TGH was fully aware of its obligation to protect the patient PII and PHI entrusted to it by both Class members and TGH's patients, because it is a sophisticated business entity that is in the business of maintaining and transmitting PII and PHI.

65.     TGH was also aware of the significant consequences of its failure to protect Private Information for the thousands of patients who provided their PII and medical information and knew that this data, if hacked, would gravely injure consumers, including Plaintiffs and Class members.

66.     Unfortunately, TGH failed to comply with HIPAA, FTC rules, regulations and guidelines, and industry standards concerning the protection and security of Private Information. As evidenced by the duration, scope, and nature of the Data Breach, among its many deficient practices, TGH failed in, *inter alia*, the following respects:

  a. Developing and employing adequate intrusion detection systems;

  b. Engaging in regular reviews of audit logs and authentication records;

  c. Developing and maintaining adequate data security systems to reduce the risk of data breaches and cyberattacks;

  d. Ensuring the confidentiality and integrity of current and former patients' PII and protected health and information and records that Defendant receives and maintains;

  e. Protecting against any reasonably anticipated threats or hazards to the security or integrity of its current and former patients' Private Information;

  f. Implementing policies and procedures to prevent, detect, contain, and correct security violations;

  g. Developing adequate policies and procedures to regularly review records of system activity, such as audit logs, access reports, and security incident tracking reports;

  h. Implementing technical policies, procedures and safeguards for electronically stored information concerning Private Information that permit access for only those persons or programs that have specifically been granted access; and

  i. Other similar measures to protect the security and confidentiality of its current and former patients' Private Information.

67.     Had TGH implemented the above-described data security protocols, policies, and/or procedures, the consequences of the Data Breach could have been avoided or greatly

reduced. TGH could have prevented or detected the Data Breach prior to the hackers accessing TGH's systems and extracting sensitive and personal information; the amount and/or types of Private Information accessed by the hackers could have been avoided or greatly reduced; and current and former patients of TGH would have been notified sooner, allowing them to promptly take protective and mitigating actions.

**G.     Plaintiffs and the Class Suffered Harm Resulting from the Data Breach**

68.     Like any data hack, the Data Breach presents major problems for all affected.[34]

69.     The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[35]

70.     The ramifications of TGH's failure to properly secure Plaintiffs' and Class members' Private Information are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

71.     According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

---

[34] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers (last accessed March 23, 2023).

[35] *Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft (last accessed March 11, 2023).

72.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

73.     Accordingly, TGH's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiffs and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.[36]  Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[37] Javelin Strategy & Research, a leading provider of quantitative and qualitative research, notes that "[t]he theft of SSNs places consumers at a substantial risk of fraud."[38]  Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported.  Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so at a later date or re-sell it.

74.     The theft of medical information, beyond the theft of more traditional forms off PII, is especially harmful for victims. Medical identity theft, the misuse of stolen medical records and information, has seen a seven-fold increase over the last five years and this explosive growth far outstrips the increase in incidence of traditional identity theft.[39] Medical Identity Theft is especially

---

[36] *Data Breach Victims More Likely To Suffer Identity Fraud*, INSURANCE INFORMATION INSTITUTE BLOG (February 23, 2012), available at http://www.iii.org/insuranceindustryblog/?p=267 (last accessed March 11, 2023).

[37] Susan Ladika, *Study: Data Breaches Pose A Greater Risk*, CREDITCARDS.COM (July 23, 2014), available at  http://www.creditcards.com/credit-card-news/data-breach-id-theft-risk-increase-study-1282.php  (last accessed March 11, 2023).

[38] THE CONSUMER DATA INSECURITY REPORT: EXAMINING THE DATA BREACH- IDENTITY FRAUD PARADIGM IN FOUR MAJOR METROPOLITAN AREAS, available at https://www.it.northwestern.edu/bin/docs/TheConsumerDataInsecurityReport_byNCL.pdf) (last accessed March 11, 2023).

[39] Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html (last accessed March 23, 2023).

nasty for victims because of the lack of laws that limit a victim's liabilities and damages from this type of identity theft (*e.g.*, a victim's liability for fraudulent credit card charges is capped at $50), the unalterable nature of medical information, the sheer costs involved in resolving the fallout from a medical identity theft (victims spend, on average, $13,500 to resolve problems arising from this crime), and the risk of criminal prosecution under anti-drug laws.[40]

75.     In response to the Data Breach, TGH offered to provide certain individuals whose Private Information was exposed in the Data Breach with two years of credit monitoring. However, even two years of complimentary credit monitoring is a period much shorter than what is necessary to protect against the lifelong risk of harm imposed on Plaintiffs and Class members by TGH's failures.

76.     Moreover, the credit monitoring offered by TGH is fundamentally inadequate to protect them from the injuries resulting from the unauthorized access and exfiltration of their sensitive Private Information.

77.     Here, due to the Breach, Plaintiffs and Class members have been exposed to injuries that include, but are not limited to:

     a.    Theft of Private Information;

     b.    Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;

     c.    Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

     d.    Costs associated with spending time to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges,

---

[40] *Id.*

imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite TGH's delay in disseminating notice in accordance with state law;

e.   The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

f.   The loss of Plaintiffs' and Class members' privacy.

78.   Plaintiffs and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals, risks that will not abate within a mere two years: the unauthorized access of Plaintiffs' and Class members' Private Information, especially their Social Security numbers, puts Plaintiffs and the Class at risk of identity theft indefinitely, and well beyond the limited period of credit monitoring that TGH offered victims of the Breach. The two years of credit monitoring that TGH offered to certain victims of the Data Breach is inadequate to mitigate the aforementioned injuries Plaintiffs and Class members have suffered and will continue to suffer as a result of the Data Breach.

79.   As a direct and proximate result of TGH's acts and omissions in failing to protect and secure Private Information, Plaintiffs and Class members have been placed at a substantial risk of harm in the form of identity theft, and have incurred and will incur actual damages in an attempt to prevent identity theft.

80.   Plaintiffs retain an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both herself and similarly situated individuals whose Private Information was accessed in the Data Breach.

## V.      EXPERIENCES SPECIFIC TO PLAINTIFFS

**A.      Plaintiff Tammy Lynn Bradd's Experience**

81.      Plaintiff Tammy Lynn Bradds is a former patient at Tampa General Hospital.

82.      She received TGH's data breach notice. The notice informed her that her information had been improperly accessed and obtained by third parties. This notice explained that the following information could have been compromised in the breach: name, address, phone number, date of birth, Social Security number, health insurance information, medical record number, patient account number, dates of service, and treatment information used by TGH for its business operations.

83.      After the breach, she experienced a significant increase in the number of spam calls and spam emails she was receiving daily.

84.      As a result of the Data Breach, Plaintiff Bradds has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Bradds has also spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including, but not limited to, work and recreation.

85.      As a result of the Data Breach, Plaintiff Bradds has suffered anxiety due to the public dissemination of her personal information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her private information for purposes of identity theft and fraud.  Plaintiff Bradds is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

86.     Plaintiff Bradds suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that Defendant obtained from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

87.     As a result of the Data Breach, Plaintiff Bradds anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, Plaintiff Bradds is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

**B.     Plaintiff Anthony Testa**

88.     Plaintiff Anthony Testa is a former patient at TGH.

89.     He received TGH's data breach notice. The notice informed him that his information had been improperly accessed and obtained by third parties. This notice explained that the following information could have been compromised in the breach: name, address, phone number, date of birth, Social Security number, health insurance information, medical record number, patient account number, dates of service, and treatment information used by TGH for its business operations.

90.     After the breach, his debit card was compromised two times and he experienced an enormous increase in the number of daily spam calls.

91.     As a result of the Data Breach, Anthony Testa has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Anthony Testa has also spent several hours dealing with the Data

Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

92.     As a result of the Data Breach, Anthony Testa has suffered anxiety due to the public dissemination of his personal information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his private information for purposes of identity theft and fraud. Anthony Testa is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

93.     Anthony Testa suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained from him; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

94.     As a result of the Data Breach, Anthony Testa anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, Anthony Testa is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## VI.     CLASS REPRESENTATION ALLEGATIONS

95.     Plaintiffs bring this action on behalf of themselves and, pursuant to Fla. R. Civ. P. 1.220, a Class of:

> All persons in the United States whose Private Information was accessed in the Data Breach.

Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class definition after conducting discovery.

96.     In the alternative, Plaintiffs bring this action on behalf of herself and a subclass of:

> All persons who are residents of the State of Florida whose Private Information was accessed in the Data Breach (the "Florida Subclass").

Excluded from the Florida Subclass are Defendant, its executives and officers, and the Judge(s) assigned to this case.

97.     This Class Action satisfies the requirements of Fla. R. Civ. P. 1.220(a).

98.     <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable with an estimated 1.2 million affected individuals.[41] The exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of TGH and obtainable by Plaintiffs only through the discovery process. The members of the Class will be identifiable through information and records in TGH's possession, custody, and control.

99.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.     Whether TGH's data security and retention policies were unreasonable;

b.     Whether TGH failed to protect the confidential and highly sensitive information with which it was entrusted;

---

[41] Richard Console, Jr., *Tampa General Hospital To Notify 1.2 Million Patients of Recent Data Breach*, JDSupra (July 20, 2023), available at https://www.jdsupra.com/legalnews/tampa-general-hospital-to-notify-1-2-4467472/ (last accessed July 23, 2023).

c.     Whether TGH owed a duty to Plaintiffs and Class members to safeguard their Private Information;

d.     Whether TGH breached any legal duties in connection with the Data Breach;

e.     Whether TGH's conduct was intentional, reckless, willful or negligent;

f.     Whether an implied contract was created concerning the security of Plaintiffs' and Class members' Private Information;

g.     Whether TGH breached that implied contract by failing to protect and keep secure Plaintiffs' and Class members' Private Information and/or failing to timely and adequately notify Plaintiffs and Class members of the Data Breach;

h.     Whether Plaintiffs and Class members suffered damages as a result of TGH's conduct; and

i.     Whether Plaintiffs and the Class are entitled to monetary damages, injunctive relief and/or other remedies and, if so, the nature of any such relief.

100.    <u>Typicality</u>: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and all members of the Class had their Private Information compromised in the Data Breach. Plaintiffs and the members of the Class sustained damages as a result of TGH's uniform wrongful conduct.

101.    <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not materially or irreconcilably conflict with the interests of the Class they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor their counsel have any interests that are antagonistic to the interests of other members of the Class.

102.     This Class Action is maintainable under Fla. R. Civ. P. 1.220(b)(2) since the same events, actions, and omissions on the part of TGH in its dealings with the Class gave rise to this action.

103.     This Class Action is maintainable under Fla. R. Civ. P. 1.220(b)(3) since the injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by TGH's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Furthermore, members of the Class can be readily identified and notified based on, *inter alia*, TGH's records and databases.

104.     TGH has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I — Negligence
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Florida Subclass)**

105.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

106.     This count is brought on behalf of all Class members.

107.     TGH owed a duty to Plaintiffs and the Class to use and exercise reasonable and due care in obtaining, retaining, and securing the Private Information that TGH collected.

108.   TGH owed a duty to Plaintiffs and the Class to provide security, consistent with industry standards and requirements, and to ensure that its cyber networks and systems, and the personnel responsible for them, adequately protected the Private Information that TGH collected.

109.   TGH owed a duty to Plaintiffs and the Class to implement processes to quickly detect a data breach, to timely act on warnings about data breaches, and to inform the victims of a data breach as soon as possible after it is discovered.

110.   TGH owed a duty of care to Plaintiffs and the Class because they were a foreseeable and probable victim of any inadequate data security practices.

111.   TGH solicited, gathered, and stored the Private Information belonging to Plaintiffs and the Class.

112.   TGH knew or should have known it inadequately safeguarded this information.

113.   TGH knew that a breach of its systems would inflict millions of dollars of damages upon Plaintiffs and Class members, and TGH was therefore charged with a duty to adequately protect this critically sensitive information.

114.   TGH had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' highly sensitive Private Information was entrusted to TGH on the understanding that adequate security precautions would be taken to protect the PII and medical information. Moreover, only TGH had the ability to protect its systems and the Private Information stored on them from attack.

115.   TGH's own conduct also created a foreseeable risk of harm to Plaintiffs, Class members, and their personal information. TGH's misconduct included failing to: (1) secure its systems, servers and networks, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and event monitoring, and

(4) implement the safeguards, policies, and procedures necessary to prevent this type of data breach.

116.    TGH breached its duties to Plaintiffs and Class members by failing to provide fair, reasonable, or adequate cyber networks and data security practices to safeguard the Private Information belonging to Plaintiffs and the Class.

117.    TGH breached its duties to Plaintiffs and the Class by creating a foreseeable risk of harm through the misconduct previously described.

118.    TGH breached the duties it owed to Plaintiffs and Class members by failing to implement proper technical systems or security practices that could have prevented the unauthorized access of Private Information.

119.    The law further imposes an affirmative duty on TGH to timely disclose the unauthorized access and theft of the Private Information belonging to Plaintiffs and the Class so that Plaintiffs and the Class can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

120.    TGH breached the duties it owed to Plaintiffs and the Class by failing to timely and accurately disclose to Plaintiffs and Class members that their Private Information had been improperly acquired or accessed.

121.    TGH breached its duty to timely notify Plaintiffs and Class members of the Data Breach by failing to provide direct notice to Plaintiffs and the Class concerning the Data Breach until July of 2023.

122.    As a direct and proximate result of TGH's conduct, Plaintiffs and the Class have suffered a drastically increased risk of identity theft, relative to both the time period before the

breach, as well as to the risk born by the general public, as well as other damages, including but not limited to time and expenses incurred in mitigating the effects of the Data Breach.

123.    As a direct and proximate result of TGH's negligent conduct, Plaintiffs and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT II — Negligence *Per Se***
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Florida Subclass)**

124.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

125.    This count is brought on behalf of all Class members.

126.    HIPAA obligates Covered Entities and Business Associates to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information" and "must reasonably safeguard protected health information." 45 CFR § 164.530(c).

127.    In the event of a data breach, HIPAA obligates Covered Entities and Business Associates to notify affected individuals, prominent media outlets, and the Secretary of the Department of Health and Human Services of the data breach without unreasonable delay and in no event later than 60 days after discovery of the data breach. 45 CFR § 164.400, *et seq.*

128.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies, such as TGH, of failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of TGH's duty.

129.    The FTC rules and regulations and HIPAA require that TGH protect Private Information from unauthorized access and disclosure, and timely notify the victim of a data breach.

130.    TGH violated HIPAA and FTC rules and regulations which obligate companies to use reasonable measures to protect Private Information by failing to comply with applicable

industry standards; and by unduly delaying reasonable notice of the actual breach. TGH's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored, the foreseeable consequences of a Data Breach and the exposure of Plaintiffs' and Class members' sensitive Private Information.

131.    TGH's violations of HIPAA, Section 5 of the FTC Act, and other applicable statutes, rules, and regulations constitutes negligence *per se*.

132.    Plaintiffs and the Class are within the category of persons that HIPAA and the FTC Act were intended to protect.

133.    The harm that occurred as a result of the Data Breach described herein is the type of harm that HIPAA and the FTC Act were intended to guard against.

134.    As a direct and proximate result of TGH's negligence *per se*, Plaintiffs and the Class have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their Private Information in TGH's possession, and are entitled to damages in an amount to be proven at trial.

### COUNT III — Breach of Implied Contract
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Florida Subclass)**

135.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

136.    This count is brought on behalf of all Class members.

137.    Plaintiffs and the Class provided TGH with their PII and medical information.

138.    By providing their Private Information, and upon TGH's acceptance of such information, Plaintiffs and the Class, on one hand, and TGH, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contract entered into between the parties.

139.     The implied contracts between TGH and Plaintiffs and Class members obligated TGH to take reasonable steps to secure, protect, safeguard, and keep confidential Plaintiffs' and Class members' Private Information. The terms of these implied contracts are described in federal laws, state laws, and industry standards, as alleged above. TGH expressly adopted and assented to these terms in its public statements, representations and promises as described above.

140.     The implied contracts for data security also obligated TGH to provide Plaintiffs and Class members with prompt, timely, and sufficient notice of any and all unauthorized access or theft of their Private Information.

141.     TGH breached the implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the Private Information belonging to Plaintiffs and Class members; allowing unauthorized persons to access Plaintiffs' and Class members' Private Information; and failing to provide prompt, timely, and sufficient notice of the Data Breach to Plaintiffs and Class members, as alleged above.

142.     As a direct and proximate result of TGH's breaches of the implied contracts, Plaintiffs and the Class have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of their PII and medical information in TGH's possession, and are entitled to damages in an amount to be proven at trial.

**COUNT IV — Bailment**
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Florida Subclass)**

143.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

144.     This count is brought on behalf of all Class members.

145.     Plaintiffs' and Class members' Private Information was provided to TGH.

146.     In delivering their Private Information, Plaintiffs and Class members intended and understood that their Private Information would be adequately safeguarded and protected.

147.     TGH accepted Plaintiffs' and Class members' Private Information.

148.     By accepting possession of Plaintiffs' and Class members' Private Information, TGH understood that Plaintiffs and the Class expected their Private Information to be adequately safeguarded and protected. Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties.

149.     During the bailment (or deposit), TGH owed a duty to Plaintiffs and the Class to exercise reasonable care, diligence, and prudence in protecting their Private Information.

150.     TGH breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class members' Private Information, resulting in the unlawful and unauthorized access to and misuse of Plaintiffs' and Class members' Private Information.

151.     TGH further breached its duty to safeguard Plaintiffs' and Class members' Private Information by failing to timely notify them that their Private Information had been compromised as a result of the Data Breach.

152.     TGH failed to return, purge, or delete the Private Information belonging to Plaintiffs and Class members at the conclusion of the bailment (or deposit) and within the time limits allowed by law.

153.     As a direct and proximate result of TGH's breach of its duties, Plaintiffs and the Class suffered consequential damages that were reasonably foreseeable to TGH, including but not limited to the damages set forth herein.

154.     As a direct and proximate result of TGH's breach of its duty, Plaintiffs' and Class members PII that was entrusted to TGH during the bailment (or deposit) was damaged and its value diminished.

## COUNT V — Intrusion Upon Seclusion
### (By Plaintiffs on behalf of the Class, or, in the alternative, the Florida Subclass)

155.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

156.    This count is brought on behalf of all Class members.

157.    Plaintiffs and Class members had a reasonable expectation of privacy in the Private Information that TGH possessed and/or continues to possess.

158.    By failing to keep Plaintiffs' and Class members' Private Information safe, and by misusing and/or disclosing their Private Information to unauthorized parties for unauthorized use, TGH invaded Plaintiffs' and Class members' privacy by:

    a.    Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

    b.    Publicizing private facts about Plaintiffs and Class members, which is highly offensive to a reasonable person.

159.    TGH knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs' position would consider TGH's actions highly offensive.

160.    TGH invaded Plaintiffs' and Class members' right to privacy and intruded into Plaintiffs' and Class members' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

161.    As a proximate result of such misuse and disclosures, Plaintiffs' and Class members' reasonable expectation of privacy in their Private Information was unduly frustrated and thwarted. TGH's conduct amounted to a serious invasion of Plaintiffs' and Class members' protected privacy interests.

162.    In failing to protect Plaintiffs' and Class members' Private Information, and in misusing and/or disclosing their Private Information, TGH has acted with malice and oppression and in conscious disregard of Plaintiffs' and the Class members rights to have such information

kept confidential and private, in failing to provide adequate notice, and in placing its own economic, corporate, and legal interests above the privacy interests of its millions of patients. Plaintiffs, therefore, seek an award of damages, including punitive damages, on behalf of Plaintiffs and the Class.

### <u>COUNT VI — Unjust Enrichment</u>
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Florida Subclass)**

163.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

164.    This count is brought on behalf of all Class members.

165.    Plaintiffs and the Class have an interest, both equitable and legal, in their Private Information that was collected and maintained by TGH.

166.    TGH was benefitted by the conferral upon it of Plaintiffs' and Class members' Private Information and by its ability to retain and use that information. TGH understood that it was in fact so benefitted.

167.    TGH also understood and appreciated that Plaintiffs' and Class members' Private Information was private and confidential and its value depended upon TGH maintaining the privacy and confidentiality of that information.

168.    But for TGH's willingness and commitment to maintain its privacy and confidentiality, Plaintiffs and Class members would not have provided or authorized their Private Information to be provided to TGH, and TGH would have been deprived of the competitive and economic advantages it enjoyed by falsely claiming that its data-security safeguards met reasonable standards. These competitive and economic advantages include, without limitation, wrongfully gaining patients, gaining the reputational advantages conferred upon it by Plaintiffs and Class members, collecting excessive advertising and sales revenues as described herein, monetary savings resulting from failure to reasonably upgrade and maintain data technology

infrastructures, staffing, and expertise raising investment capital as described herein, and realizing excessive profits.

169.    As a result of TGH's wrongful conduct as alleged herein (including, among other things, its deception of Plaintiffs, the Class, and the public relating to the nature and scope of the data breach; its failure to employ adequate data security measures; its continued maintenance and use of the Private Information belonging to Plaintiffs and Class members without having adequate data security measures; and its other conduct facilitating the theft of that Private Information TGH has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class.

170.    TGH's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiffs' and Class members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion.

171.    Under the common law doctrine of unjust enrichment, it is inequitable for TGH to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiffs and the Class in an unfair and unconscionable manner. TGH's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

172.    The benefit conferred upon, received, and enjoyed by TGH was not conferred officiously or gratuitously, and it would be inequitable and unjust for TGH to retain the benefit.

173.    TGH is therefore liable to Plaintiffs and the Class for restitution in the amount of the benefit conferred on TGH as a result of its wrongful conduct, including specifically the value to TGH of the PII and medical information that was accessed and exfiltrated in the Data Breach and the profits TGH receives from the use and sale of that information.

**COUNT VII — Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201-.213**
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Florida Subclass)**

174.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

175.     The FDUTPA prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the provision of commerce. *See* Fla. Stat. § 501.202(2).

176.     TGH's deceptive acts or practices in the conduct of business include, but are not limited to:

> a.     Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class members' Private Information, which was a direct and proximate cause of the Data Breach;
>
> b.     Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents in the industry, which were direct and proximate causes of the Data Breach;
>
> c.     Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' Private Information, including but not limited to duties imposed by the FTC Act, which were direct and proximate causes of the Data Breach;
>
> d.     Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Class members' Private Information, including by implementing and maintaining reasonable security measures;
>
> e.     Misrepresenting that it would comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiffs' and Class members' Private Information;
>
> f.     Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Class members' Private Information;
>
> g.     Omitting, suppressing, and concealing the material fact that it did not comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiffs' and Class members' Private Information; and

h.  Failing to promptly and adequately notify Plaintiffs and the Class that their Private Information was accessed by unauthorized persons in the Data Breach.

177.  TGH is engaged in, and its acts and omissions affect, trade and commerce. TGH's relevant acts, practices and omissions complained of in this action were done in the course of TGH's business of marketing, offering for sale, and selling goods and services throughout Florida and the United States.

178.  TGH had exclusive knowledge of material information regarding its deficient security policies and practices, and regarding the security of Plaintiffs' and Class members' Private Information. This exclusive knowledge includes, but is not limited to, information that TGH received through internal and other non-public audits and reviews that concluded that TGH's security policies were substandard and deficient, and that Plaintiffs' and Class members' Private Information and other TGH data was vulnerable.

179.  TGH had exclusive knowledge about the extent of the Data Breach, including during the days, weeks, and months following the Data Breach.

180.  TGH also had exclusive knowledge about the length of time that it maintained individuals' Private Information after they stopped using services that necessitated the transfer of that Private Information to TGH.

181.  TGH failed to disclose, and actively concealed, the material information it had regarding TGH's deficient security policies and practices, and regarding the security of the sensitive Private Information. For example, even though TGH has long known, through internal audits and otherwise, that its security policies and practices were substandard and deficient, and that Plaintiffs' and Class members' Private Information was vulnerable as a result, TGH failed to disclose this information to, and actively concealed this information from, Plaintiffs, Class members and the public. TGH also did not disclose, and actively concealed, information regarding

the extensive length of time that it maintains former patients' Private Information and other records. Likewise, during the days and weeks following the Data Breach, TGH failed to disclose, and actively concealed, information that it had regarding the extent and nature of the Data Breach.

182.   TGH had a duty to disclose the material information that it had because, *inter alia*, it had exclusive knowledge of the information, it actively concealed the information, and because TGH was in a fiduciary position by virtue of the fact that TGH collected and maintained Plaintiffs' and Class members' Private Information.

183.   TGH's representations and omissions were material because they were likely to deceive reasonable individuals about the adequacy of TGH's data security and its ability to protect the confidentiality of current and former patients' Private Information.

184.   Had TGH disclosed to Plaintiffs and the Class that its data systems were not secure and, thus, vulnerable to attack, TGH would have been unable to continue in business without adopting reasonable data security measures and complying with the law. Instead, TGH received, maintained, and compiled Plaintiffs' and Class members' Private Information without advising that TGH's data security practices were insufficient to maintain the safety and confidentiality of their Private Information.

185.   Accordingly, Plaintiffs and Class members acted reasonably in relying on TGH's misrepresentations and omissions, the truth of which they could not have discovered.

186.   TGH's practices were also contrary to legislatively declared and public policies that seek to protect data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected in laws, such as HIPAA and the FTC Act.

187.   The injuries suffered by Plaintiffs and the Class greatly outweigh any potential countervailing benefit to consumers or to competition, and are not injuries that Plaintiffs and the Class should have reasonably avoided.

188.   The damages, ascertainable losses and injuries, including to their money or property, suffered by Plaintiffs and the Class as a direct result of TGH's deceptive acts and practices as set forth herein include, without limitation:

a.   unauthorized charges on their debit and credit card accounts;

b.   theft of their Private Information;

c.   costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.   loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse effects on their credit scores and adverse credit notations;

e.   costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Data Breach, including without limitation finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

f.   the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

g.   damages to and diminution in value of their personal information entrusted to TGH, and with the understanding that TGH would safeguard their data against theft and not allow access and misuse of their data by others; and

h.   the continued risk to their Private Information, which remains in the possession of TGH and which is subject to further breaches so long as TGH fails to undertake appropriate and adequate measures to protect data in its possession.

189.    Plaintiffs and the Class seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring TGH from disclosing their Private Information without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 1.220 of the Florida Rules of Civil Procedure; declare that Plaintiffs are proper class representatives; and appoint Plaintiffs' Counsel as Class Counsel;

B.    That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

C.    That the Court award Plaintiffs and the Class members compensatory, consequential, and general damages in an amount to be determined at trial;

D.    That the Court award Plaintiffs and the Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

E.    That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

F.    That the Court award pre- and post-judgment interest at the maximum legal rate;

G.    That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

H.    That the Court grant all other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Date: August 7, 2023                         Respectfully Submitted,

**LIESER SKAFF ALEXANDER, PLLC**
403 North Howard Avenue
Tampa, FL 33606
Tel: (813) 280-1256
Fax: (813) 251-8715

*/s/ Jeffrey P. Lieser*
JEFFREY P. LIESER
Fla. Bar No.: 29164
Primary: jeff@lieserskaff.com
Secondary: efile@lieserskaff.com

*and*

Daniel O. Herrera (*pro hac admission anticipated*)
Nickolas J. Hagman (*pro hac admission anticipated*)
Alex Lee (*pro hac admission anticipated*)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

*Counsel for Plaintiffs and the Proposed Class*

# EXHIBIT A

ABOUT TAMPA GENERAL (/ABOUT-TGH)

HEALTHCARE PROFESSIONALS (/HEALTHCARE-PROFESSIONALS)

CAREERS (/CAREERS-AT-TGH)

GIVING (/GIVING)

TAMPA-GENERAL (/)

/AUTHENTICATION (/LOGIN)

FIND A DOCTOR (/FIND-A-DOCTOR)

FIND A LOCATION (/APPOINTMENT)

INSTITUTES & SERVICES

PATIENTS & VISITORS

TAMPA-PATIENTS & GENERAL)

RESEARCH & INNOVATION

SCHEDULE APPOINTMENT

SCHEDULE NOW (/SCHEDULE)

Menu

# Cybersecurity Notice

## Notice to Our Patients of Cybersecurity Event

Tampa General Hospital considers the health, safety, and privacy of our patients and team members a top priority. Regrettably, this notice concerns a cybersecurity event that may have involved some of that information.

**What Happened?**

On May 31, 2023, through our proactive monitoring tools, TGH detected unusual activity on our computer systems. We immediately took steps to contain the activity and began an investigation with the assistance of a third-party forensic firm. Fortunately, TGH's monitoring systems and experienced technology professionals effectively prevented encryption, which would have significantly interrupted the hospital's ability to provide care for patients. However, the investigation determined that an unauthorized third party accessed TGH's network and obtained certain files from its systems between May 12 and May 30, 2023.

TGH reported the event to the FBI and provided information to support its investigation of the criminal group responsible.

**What Information Was Involved?**

We reviewed the files involved and determined that some patient information was included. The information varied by individual, but may have included names, addresses, phone numbers, dates of birth, Social Security numbers, health insurance information, medical record numbers, patient account numbers, dates of service and/or limited treatment information used by TGH for its business operations. TGH's electronic medical record system was **not** involved or accessed.

**What is TGH Doing?**

TGH considers the health, safety and privacy of patients and team members a top priority. The hospital is continuously updating and hardening systems to help prevent events such as this from occurring and has implemented additional defensive tools and increased monitoring.

**What Can Patients Do?**

TGH will be mailing notification letters to individuals whose information may have been involved in this event and is also providing individuals whose Social Security number was involved with complimentary

Case 8:23-cv-02127-KKM-JSS   Document 1-1   Filed 09/20/23   Page 47 of 49 PageID 73

credit monitoring and identity theft protection services. Patients are encouraged to review statements from their health insurer and healthcare providers, and to contact them immediately if they see any services they did not receive.

[(/)](/)

---

## 813-844-7000 (tel:8138447000)

**CONTACT US   (/ABOUT-TGH/CONTACT-US)**

**MAKE A GIFT   (/FOUNDATION/GIVING/MAKE-A-GIFT)**

### ABOUT TGH

About Tampa General Hospital (/about-tgh)

Leadership Team (/about-tgh/tampa-general-hospital-leadership)

The Academic Difference (/about-tgh/academic-health-system)

TGH Foundation (/foundation)

Advances Magazine (https://lsc-pagepro.mydigitalpublication.com/publication/?i=795174)

TGH Annual Report (/about-tgh/tgh-annual-report)

Community Health & Wellness (/about-tgh/community-health-and-wellness)

Employer Solutions (/institutes-and-services/employer-solutions)

Nondiscrimination Policy (/nondiscrimination-policy)

### FOR PATIENTS

Classes & Events (/patients-visitors/classes-events)

Medical Records (/patients-visitors/medical-records)

Billing & Insurance (/patients-visitors/billing-insurance)

Lab Test Directory (/healthcare-professionals/lab-test-directory)

### FOR HEALTHCARE PROFESSIONALS

Refer a Patient (/healthcare-professionals/refer-a-patient)

TGH EpicLink (/healthcare-professionals/tgh-epiclink)

Defining Medicine (/defining-medicine)

CareMESH PreEnrollment SignUp (/healthcare-professionals/caremesh-preenrollment-signup)

### STAY CONNECTED

News & Media (/news)

Classes & Events (/patients-visitors/classes-events)

Request an Application for Privileges
(/healthcare-professionals/medical-staff-
privileges-application-request)

Careers (/careers-at-tampa-general)

Managed Care Credentialing Request
(/healthcare-professionals/managed-care-
credentialing-request)

---

**FOLLOW US ON SOCIAL MEDIA**



(https://linkedin.com
https://www.twitter.com/facebook.uk.co /company/ta
r/tampageneral/TGHCares)tampageneralhospital general-hos     (https://adasitecompliancetools.com/ap.asp?h=TGH)

---

© 2023 Tampa General Hospital

Compliance (/accessibility-compliance-policy)

Nondiscrimination Policy (/nondiscrimination-policy)

Terms of Use (/terms-of-use)